## HUDSPETH et al. v. SCHMELZER et al.

No. 27856.   March 8, 1938.

Rehearing Denied April 5, 1938.

J. D. Lydick and R. F. Barry, for plaintiffs in error.

Hal Welch, for defendants in error.

HURST, J. This is an action to cancel an oil and gas lease. The lease was dated January 15, 1935, and was executed by plaintiffs, E. A. Schmelzer and his son Roy Schmelzer. It provided for a term of ten years and as long thereafter as oil or gas is produced, and required the commencement of a well within a year unless the lessee pay the specified delay rentals. It was further provided that in the event of a dry hole, the lessee must either commence another well before the next delay rental period or pay the rental. The lessee and his assignees are defendants.

Plaintiffs alleged that before the first delay rental payment became due the lessees drilled a dry hole and abandoned the premises, and failed to commence another well or pay the specified delay rental on January 15, 1936, as required by the lease.

The defendants contend that the lease was in fact executed on March 5, 1935, at which time there was executed a collateral written agreement which was not dated, and also an "oil contract assignment" bearing date of March 5, 1935. The facts alleged are that the lease was first prepared and placed in escrow for sale to another, but as the lease was not taken up within the required time, plaintiffs then entered into the written agreement referred to with the lessee, through his agent, whereby it was agreed that the lease would be delivered if the lessee began "actual work and spudded in for a test well" within 60 days from the date of the agreement. The agreement further provided that the lessee would deliver to the lessor the sum of $6,000 payable out of oil derived from 1/8 of the 7/8 working interest if, as, and when produced. The "oil contract assignment" was merely an assignment of the oil payment as agreed. It was further alleged that these instruments were placed in escrow and that it was agreed that the name of the lessee and date on the former lease be changed to conform with this agreement; that, although the name was changed, the date was inadvertently left as January 15, 1935. It was further alleged that a well was commenced within the 60-day period required in the agreement. Up to this point, the allegations of defendants were substantially established at the trial without contradiction, except as to the exact date of the agreement, and the controversy arises as to the facts after the well was spudded in and drilling operations commenced. In this connection defendants alleged that the drilling continued without interruption until about June 22, 1935, at which time a depth of about 1,120 feet had been reached. On that date it was alleged that operations ceased for a period of about 30 days because the Oil Well Supply Company entered upon the premises and took away certain machinery which the lessee had leased from a third party, but thereafter drilling was resumed and a saturated oil sand was encountered and partially tested. It is then alleged that the defendants were again forced to cease operations and were prevented from further drilling because of lack of water and that while waiting for a replenishment of the water supply, one of the plaintiffs, on September 14, 1935, wrote them that "this is to notify you that my attorney is starting suit to cancel lease", and that neither of plaintiffs ever made demand for compliance with the terms of the lease. It is alleged that for these reasons, the defendants paid nothing further, but have at all times been ready, willing, and able to perform their part of the agreement. These facts were established at the trial by the testimony of the defendants, but were contradicted on practically every material point by the plaintiffs. Although the letter was written by only one of the plaintiffs, he had express authority to

418

represent both. Regarding the delay rentals, it appeared that sometime between January 15 and March 5, 1936, the defendants tendered payment to the bank, but were advised that the time had expired and payment was not made. The trial court rendered judgment in favor of plaintiffs, and the defendants bring this appeal.

■ Defendants contend that the judgment should be reversed because there is no evidence that they had any intention to abandon the premises. Abandonment has become largely a question of intention to be determined from the facts and circumstances surrounding each particular case. Blackwell Oil & Gas Co. v. Whited (1921) 81 Okla. 45, 196 P. 688; Strange v. Hicks (1920) 78 Okla. 1, 188 P. 347; Fox Petroleum Co. v. Booker (1926) 123 Okla. 276, 253 P. 33. Summers on Oil & Gas. sec. 164. The defendants testified that they had discovered a saturated oil sand sufficient to produce oil and gas in paying quantities, and that at all times they were ready, willing, and able to proceed with the well as agreed, and that they never had any intention to abandon the premises. The testimony as to their intention was competent. Blackwell Oil & Gas Co. v. Whited, supra. The record discloses that operations ceased for a period of about a month in June, 1935, due to the interference by the Oil Well Supply Company, but they were again resumed and an oil sand discovered and partially tested. During that period, the lessee conveyed certain interests in the lease to the other defendants in order to secure money with which to proceed, and there is nothing to indicate an intention at that time to abandon. It appears that operations again ceased on about September 2, 1935, and the hole filled with mud to preserve the oil sand discovered. Defendants testified that the reason for shutting down on that date was the lack of water due to the widespread drouth of that year, and to make arrangements for recementing the well. Plaintiffs testified that there was ample water at that time, but irrespective of the conflict of testimony on that issue, it clearly appears that the evidence does not reflect an intention to abandon by that cessation of drilling operations. On September 14, 1935, plaintiffs notified the defendants by the letter referred to above that they were starting proceedings to cancel the lease, and the conduct of defendants subsequent to that time is principally relied upon to establish abandonment. The defendants did nothing further toward the development of the premises during the seven months interval

between the giving of the notice and the filing of this action, but their inactivity is explained by the fact that they expected suit to be filed at any time and did not want to invest any more money in the project pending the threatened litigation. The delay under such circumstances cannot be said to evidence an intention to abandon. The plaintiffs rely chiefly upon the fact that defendants removed certain machinery from the premises after receiving the notice, as contradicting defendants' testimony that they did not intend to abandon their rights under the lease. The testimony in this regard is that about 60 days after operations had ceased on September 2, 1935, defendants removed certain equipment used in connection with rotary drilling and returned it to the party from whom it was leased. But it was also stated that the machinery could be easily replaced and that defendants were at all times willing to do so. Under these circumstances we do not think the evidence can support a finding of abandonment on the part of the defendants.

■ The defendants further contend that the duty of the lessee to diligently proceed with the drilling of the well, if any such duty exists, rests upon an implied rather than an express covenant, and that the judgment should be reversed because no demand to comply with the implied covenant was made. The lease contained no express stipulation regarding due diligence, so it may be conceded that such covenant is implied herein. Summers on Oil & Gas, sec. 134. It is a settled rule in the law of oil and gas that in a case of a breach of an implied covenant to properly develop an oil and gas lease the lessor must demand that the implied covenant of the lease be complied with, and a reasonable time thereafter be given, before a court of equity will grant a forfeiture. Wapa Oil & Development Co. v. McBride (1921) 84 Okla. 184, 201 P. 984; Papoose Oil Co. v. Rainey (1923) 89 Okla. 110, 213 P. 882; Farmers' Mutual Oil Leasing Co. v. Bonneau (1925) 110 Okla. 168, 237 P. 83; Utilities Prod. Corp. v. Riddle (1932) 161 Okla. 99. 16 P.2d 1092; Gypsy Oil Co. v. Champlin (1933) 163 Okla. 226. 22 P.2d 102. Plaintiffs contend that on June 22nd, when the Oil Well Supply Company took away the machinery, one of the plaintiffs ordered the lessee off the premises, and that this was a sufficient demand for compliance with the implied provisions of the lease. But the evidence does not support this contention. These facts are derived from the testimony of de-

fendant Young, wherein he stated that on the occasion mentioned plaintiff "came on the lease and told us to get off." The purport of the conversation is not disclosed and defendant Young further testified that neither of the plaintiffs asked the lessees "to do anything on the premises" prior to September 14, 1935, the date of the letter referred to above. Nor do we think the letter constituted sufficient demand. It was merely a notice that plaintiffs were starting suit to cancel the lease. It was final and unequivocal, and did not demand that the implied covenants be complied with, but declared a present intent to cancel, and plaintiff testified that such is the impression that he wished to convey. Rather than request them to proceed, this notice, according to the testimony of defendants, caused them to desist. We therefore conclude that plaintiffs made no demand upon defendants as required. See Gypsy Oil Co. v. Champlin, supra. Where there is no sufficient demand to comply with the implied covenants of the lease, it is unnecessary to determine whether or not a ground for forfeiture actually exists (Utilities Prod. Corp. v. Riddle, supra), and plaintiffs are not entitled to cancellation on the ground of a breach of the implied covenant.

Plaintiffs contend that a demand is not necessary where there has been an abandonment and rely upon the case of Hitt v. Henderson (1925) 112 Okla. 194, 240 P. 745. But, as heretofore pointed out, the evidence is insufficient to support a finding of abandonment in this case.

However, plaintiffs further contend that the defendants acquiesced in the declaration of forefeiture of September 14, 1935, in that they made no effort to get in touch with plaintiffs and adjust their differences. But in view of the nature of the letter, the defendants were under no duty to communicate with the plaintiffs to attempt to make them retract their declaration. Such a declaration of forfeiture is an attack upon the title of the 'lessees, and they are thereby relieved of the duty of proceeding further during the continuance of such attack. Chapman v. Bowers (1937) 180 Okla. 49, 67 P.2d 788; Simons v. McDaniels (1932) 154 Okla. 168, 7 P.2d 419; Consumers' Gas Trust Co. v. Worth (1904 Ind.) 71 N. E. 489; Lafayette Gas Co. v. Kelsay (1905 Ind.) 74 N. E. 7; Texas Pac. Coal & Oil Co. v. Patton (1922 Tex. Com. App.) 283 S. W. 202. If plaintiffs had any contrary intention, it was their duty to communicate it to the defendants, and the record shows that this was not done. Neither is the lessee required to pay delay rentals under these circumstances, because "a lessor may not enforce a forfeiture for failure to drill or pay delay rental within the time stipulated in the lease, if the failure of the lessee to drill or pay is attributable to the fault of the lessor." Summers on Oil & Gas, sec. 160.

The judgment is reversed, with directions to enter judgment in favor of defendants, with authority to proceed with drilling operations with due diligence pursuant to the implied covenant so to do.

It is clear from the record that the lease was not executed on January 15, 1935. Defendants positively testified that it was executed on March 5, 1935, and the evidence of the plaintiffs in this regard was evasive. Therefore the trial court is further directed to enter judgment decreeing the date of the lease to be March 5, 1935, and directing the parties to proceed thereunder accordingly.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and GIBSON, JJ., concur.