Ova Pat MASON and Delores Faye Mason, Appellants,

v.

LADD PETROLEUM CORPORATION, Carl S. Ford, Ruby Ford, A. L. Cook, Flossie Irene Cook, E. D. Cook, Ruth Cook, F. D. Jones, Lillie T. Jones, Herbert Ferguson, Blanche S. Ferguson, Jack Dearing, Jessie Carl Dearing, Royal Petroleum Corporation, and their unknown successors, Appellees.

No. 52858.

Supreme Court of Oklahoma.

June 30, 1981.

Raymond D. Munkres, Hunt, Munkres & Dixon, Midwest City, for appellants.

Gordon F. Brown, James H. Lockhart, Brown & Lockhart, Oklahoma City, for appellees.

LAVENDER, Justice:

This is an appeal from a judgment denying the cancellation of oil and gas leases. Appellants, Ova Pat Mason and Delores Faye Mason, will be referred to as plaintiffs, as they appeared below. Ladd Petroleum Corporation was the only defendant appearing at trial, and will be referred to as defendant. Defendants, below, Royal Petroleum Corporation, Jack Dearing, Jessie Carl Dearing, and Flossie Irene Cook released and disclaimed any and all right, title, and interest in the premises. Defendants below, E. D. Cook, Ruth Cook, F. D. Jones, Lillie T. Jones, and their unknown successors will be referred to as the non-answering defendants.

Plaintiffs are the owners of the entire surface interest and a part of the mineral interest in a tract of land in Major County. Defendant is the assignee of the lessees' interest under certain oil and gas leases on the tract whose primary terms have expired and whose continued existence depends on continued production from the premises in paying quantities. Defendant is the sole operator. The non-answering defendants are the apparent owners of term mineral interests whose primary terms have expired and whose continued existence depends on continued production of oil or gas from the leases. The tract embracing the leases is a part of a 640-acre drilling unit on which a gas well, known as the Sherman No. 1 well is located.

The habendum clause of defendant's leases provide that they shall remain in force, after the primary term, for as long thereafter as oil or gas is produced. As we said in *Stewart v. Amerada Hess Corp.*:[1] "The term 'produced', when used in a 'thereafter' provision of the habendum clause, denotes in law production in paying quantities. The phrase means that the lessee must produce in quantities sufficient to yield a return, however small, in excess of 'lifting expenses', even though well drilling and completion costs might never be repaid."

The principal issue before us is whether the Sherman No. 1 well has ceased being produced in paying quantities, thereby making defendant's leases vulnerable to termination.

In determining whether a well is being produced in paying quantities, only those expenses which are directly related to lifting or producing operations can be offset against production proceeds to determine whether a well is a producer. We have heretofore held that such expenses may include costs of operating the pumps, pumpers' salaries, costs of supervision, gross production taxes, royalties payable to the lessor, electricity, telephone, repairs, and other incidental lifting expenses.[2] In *Stewart*, we added depreciation of equipment used in lifting operations for the reason that "production-related equipment does have value that is being reduced through its continued operation,"[3] and further added: "The base and the period of depreciation should be determined by reference to currently prevailing accounting standards."

1. 604 P.2d 854 (1980).

2. *Stewart v. Amerada Hess Corp., supra*, note 11.

3. *Cf. Texaco, Inc. v. Fox*, 228 Kan. 589, 618 P.2d 844, 848 (1980) wherein the Kansas Supreme Court rejected the rationale of *Stewart* and held depreciation not chargeable against production income in determining whether there is production in paying quantities.

The precise question now before us is whether the following expenses should be deducted from production proceeds in determining whether the Sherman No. 1 is producing in paying quantities:

1. District expenses;
2. Administrative overhead;
3. Depreciation of casing, tubing and Christmas tree;
4. Depreciation of a line heater and low pressure separator.

We will consider these items in order.

■ 1. District expenses. The facts in the case before us as to what constitutes "district expenses" are undisputed. Defendant is characterized as a multi-million dollar corporation. Its Tulsa Division which has general supervision over the Sherman No. 1 operates over or has production from 3100 wells, out of which defendant operates 600. As a part of its corporate operational structure, there is a district office which is the first level of supervision. The district superintendent runs the district office. He supervises the wells within the district, receives production reports from pumpers within the district, generally has a district foreman and district clerks who gather information, fill out forms and forward information to the home office. The district office is the first level in defendant's chain of command. But while a district office may be convenient and even necessary as a pragmatic approach to making a corporate giant functional in the corporate administration of its lease operations, we deem the expense of such an office to be too indirectly and too remotely related to defendant's lifting or producing operations in connection with the Sherman No. 1 well to be included in determining whether the well operates at a profit. The district office expense relates to and is made necessary by reason of corporate convenience or necessity, and not by reason of anything necessary or convenient for the lifting operations of the well. Here we distinguish between what may be corporate convenience and necessity on the one hand, and the convenience and necessity of those functions which relate directly to the production or "lifting expenses" intimate to the actual production of a well on the other hand. To do otherwise is to lose sight of the real issue, that is, whether a well yields production income in excess of the cost of the production. The owner and operator of an oil and gas leasehold estate may for whatever reason be multi-tiered, and may for whatever reason, accounting or otherwise, be capable of attributing a portion or percentage of its over-all operational expense to an individual well, an attempted application of such expenses to lifting expenses of a well to determine the issue before us will but lead to the absurdity of determining a well to be a non-producer in the hands of a corporate giant, yet a producer in the hands of a single leasehold owner-operator who is unfettered by such attendant complexities.

Neither can the determination of the issue rest with accounting practices, that is, how such expenses are carried on the books of the leasehold owner-operator. Until such time as accounting practices become standardized, generally accepted accounting practices may lead to one result, whereas equally accepted accounting practices, using acceptable but alternate methods and practices, can result in an opposite result.[4]

■ 2. Administrative overhead. At the trial, defendant's engineer witness testified that administrative overhead includes "the cost of operating the other departments within the company, such as legal, exploration, drafting, (and) accounting," and the "general cost of running the company." Plaintiffs' witness, a certified public accountant and an expert in oil and gas accounting procedures, testified that administrative overhead is the administrative cost of production alone, and "does not include normally your expenses associated with the

4. See *Statement of Financial Accounting Standards No. 19,* Financial Accounting and Reporting by Oil and Gas Producing Companies of the Financial Accounting Standards Board, December 1977, and *Suspension of Certain Accounting Requirements for Oil and Gas Producing Companies,* an Amendment of FASB Statement No. 19.

lease department, development, exploration, geological or legal department." The trial judge defined it as being "that indirect expense attributable to the cost of accounting, interest, postage, office supplies, telephone, depreciation of office equipment, and all the other indirect expenses of the oil company regarding production." This diversity of views within the oil industry itself emphasizes what we have heretofore said regarding district expenses, and leads us to the conclusion that in determining whether a well is a producer, such administrative overhead expenses should be excluded. The fact that operators under a joint operating agreement generally treat such expenses as chargeable *inter se*, does not, as plaintiff contends, establish a basis for including them as chargeable expenses in determining whether a well is a producer, both because no joint operating agreement was here involved, and because even if there were, such expenses would still be too indirectly and too remotely related to lifting costs.[5]

■ 3. Depreciation of casing, tubing, and Christmas tree. The trial court found and determined under the facts in this case that depreciation on the casing, tubing, and Christmas tree should not be chargeable as lifting costs, apparently on the theory that these items are closely related to well completion costs as distinguished from lifting costs. While the evidence on this subject was somewhat conflicting, there was ample evidence to support the trial judge's finding that the casing, tubing, and Christmas tree were not directly related to lifting costs and such finding in light of our rulings heretofore made will not be disturbed on appeals.

■ 4. Depreciation of a line heater and low pressure separator. Under the undisputed evidence adduced at trial, the Sherman No. 1 well was drilled in December 1953, and acquired by defendant in November 1974. Located on the well site was a line heater and a low pressure separator which apparently belonged to defendant, but which had never been utilized by defendant in connection with its operations on the Sherman No. 1 well. While such items are closely allied or akin to equipment generally used in lifting operations, and while they concededly depreciate though not in use and therefore may be a subject of "depreciation" in an accounting sense for the purposes of taxation, there being no evidence that the two items were ever used on the Sherman No. 1 well, or that they were ever intended or acquired for use in lifting operations on the Sherman No. 1, we hold that their mere proximity to the well does not make their "depreciation" an item of expense chargeable against production proceeds in determining whether the well is a producer.

■ An elementary mathematical calculation from the facts in the record supports the findings of the trial court that taking into account all of the lifting expenses properly chargeable against production proceeds in the operation of the Sherman No. 1, the well was producing in paying quantities, and therefore defendant's leases were not vulnerable to the claim of termination.

One final issue remains. Plaintiffs allege error on the part of the trial court in not entering a judgment by default against the non-answering defendants on plaintiffs' oral motion that the trial court do so. A review of the record before us reveals neither a motion for default judgment against the non-answering defendants, nor any ruling of the trial court that they are or are not in default. Matters not in the record may not be reviewed on appeal.[6]

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and HODGES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

---

5. Court of sister states have coped with the problem of whether administrative expenses are chargeable in determining whether a well is a producer, with varying results. See 43 A.L.R.3d 1 (beginning at p. 55); *Reese Enterprises, Inc. v. Lawson,* 220 Kan. 300, at p. 313, 553 P.2d 885, cited with approval in *Texaco, Inc. v. Fox, supra,* note 3.

6. *McGhee v. McAllister,* Okl., 474 P.2d 940 (1970).