**JAMES ENERGY COMPANY**
et al., Appellants,

v.

**HCG ENERGY CORPORATION**
et al., Appellees.

**Nos. 75695, 75963 and 76370.**

Supreme Court of Oklahoma.

July 14, 1992.

As Corrected Aug. 14, 1992.

As Modified on Rehearing March 2, 1993.

Houston and Klein, Inc. by Ira L. Edwards and David W. Wulfers, Tulsa, for appellee HCG Energy Corp.

HODGES, Vice Chief Justice.

This appeal arises from a district court order quieting title to certain oil and gas leases in the plaintiff James Energy Company (James Energy), refusing to cancel other leases held by the defendant HCG Energy Corporation (HCG), dismissing James's actions for slander of title and interference with its contractual relations, and ordering James and HCG to become working interest owners in a gas well.

This action involves 160 acres in the northwest quarter of section 35–11N–12E, Okmulgee County, Oklahoma, and the Ponnequin No. 1–35 Well which was drilled on the acreage. The record title mineral interest owners in the 160 acres in 1986 and their proportionate share of the mineral rights are as follows:

*NW quarter of the NW quarter*
Archie E. and Wilma Powders ¼
Ethel Martin ¼
Scott H. Morse ⅜
J.R. Mitchell and Maggie Mitchell ⅛

*NE quarter of the NW quarter*
Ponnequin All

*SE quarter of the NW quarter*
Elmer and Mary Helen Jobe ½
Phillip W. Norris ½

*SW quarter of the NW quarter*
Lillian Stephenson ¾
Delmer Don Kennedy ¼

When the well was drilled, Hold Oil Corporation (Hold), predecessor to defendant HCG Energy Corporation (HCG), had leases from Archie E. and Wilma Dean Powders and Lillian Stephenson. D & W Oil and Gas Properties, Inc. (D & W) had leases from Richard Stanley Lane and Ella Mae Lane, Jack D. Morse, Donald G. Morse and Bob W. Morse (heirs of Scott H. Morse); Delmer Don Kennedy; H.D. Ponnequin; and Elmer W. and Mary Helen Jobe. Each

Jones, Givens, Gotcher & Bogan by Kenneth G.M. Mather and James E. Weger, Tulsa, for appellant James Energy Co.

lease contained an habendum clause providing for the continuation of the lease past the primary term "as long thereafter as oil and gas, or either of them, is produced from said land by the lessee." The leases also provided for the payment of shut-in royalty payments if the well was shut in and there was no current production from the well. The shut-in royalty payments were "to be made on or before the aniversary date of [the] lease next ensuing after the expiration of ninety (90) days from the date such well [was] shut in" and every year thereafter. It is undisputed that the shut-in royalty payments were not timely paid.

On February 19, 1986, the Corporation Commission (Commission) entered an order providing for 160–acre spacing. On March 3, 1986, Hold filed an application with the Commission to pool the mineral interest in the previously established 160 acre spacing unit. The application recited that Hold had "conducted a diligent and meaningful search of the local county assessor's records, county treasurer's records, county deed records regarding the property involved for return addresses on recorded instruments, county probate records and city and county telephone directories and other sources of such information to locate each respondent...." The application and a notice of the hearing was mailed to Scott H. Morse, Maggie Mitchell, Don E. Morse, Phillip W. Norris, David Edward Morse, Ethel Martin, John F. Martin, Susan Morse Durfee, and J.R. Mitchell. At the time of the mailing, Maggie Mitchell, J.R. Mitchell, and Phillip W. Norris were deceased. Their heirs did not receive notice.

On April 17, 1986, the Commission issued an order force pooling the mineral interests and designating Hold as the operator. In the order, the Commission found that it had jurisdiction of the subject matter and "that notice [had] been given in all respects as required by law and by the rules of the Commission." The order also stated "that a judicial inquiry was made into the sufficiency of the notice given." The Commission designated Hold as the operator of the well.

A copy of the order was not mailed to J.R. Mitchell, Maggie Mitchell, Phillip W. Norris, or Susan Morse Durfee. Neither was a copy of the order mailed to the heirs of J.R. Mitchell, Maggie Mitchell, and Phillip W. Norris. Hold filed an affidavit stating that the reason that the order was not mailed to these four people was "that the applicant, after the exercise of due diligence, has been unable to ascertain the whereabouts of said parties or whether said parties are living or deceased and, if deceased, the applicant has been unable to ascertain the identity and whereabouts of their heirs, devisees, representatives and assigns."

Hold drilled the Ponnequin No. 1–35 Well. Dayle James, owner of plaintiff James Energy, admitted during his testimony at trial that the well was capable of commercial production, i.e. producing in paying quantities. This same admission was in James Energy's brief on appeal. The cost of drilling the well was $178,-262.69. Hold did not sell any oil or gas from the well. Several witnesses testified that Hold attempted to market the gas but was unsuccessful.

James Energy, through its witness George Inglish who did a title examination for James Energy, submitted a chart which reflected the results of Mr. Inglish's review of the mineral estates. The chart, entitled "Mineral Interest Owners At Commencement of Well," shows that Hold held leases from Archie E. and Wilma Jean Powers and from Lillian Stephenson. The chart also shows that D & W held leases from Richard Stanley Lane and Ella Mae Lane, Jack D. Morse, Bob W. Morse, H.D. Ponnequin, Delmer Don Kennedy, and Elmer W. Jobe and Mary Helen Jobe. Therefore, James Energy had notice of these leases even though at least some of them were not filed of record.

H.D. Ponnequin assigned his mineral interest to Robert and Genevieve Sutterfield. In 1989, James Energy procured leases from all the mineral interest owners in the spacing unit on which the Ponnequin No. 1–35 Well was drilled. Before James Energy was able to obtain a lease from the

Sutterfields, it filed an application to force pool their interest. On November 16, 1989, the Commission entered an order force pooling the Sutterfields' interest and designating James Energy as the operator of the well. Hold did not receive notice of the hearing, and its interest was not force pooled.

James Energy contacted Hold about buying the casing in the well but Hold refused to sell. James Energy then contracted with Phillips to sell the gas from the well. Hold contacted Phillips claiming an interest in the well. Phillips shut in the well but later resumed production.

Robert and Genevieve Sutterfield and James Energy (collectively, plaintiffs) filed this quiet title action against HCG, Deffenbaugh and Associates, Inc. (successor to D & W), and several Hold partnerships (collectively, defendants) and also sought a cancellation of Hold's and D & W's leases and damages for interference with contractual relations and slander of title. Deffenbaugh, as successor to D & W, filed a disclaimer stating "that D & W Oil and Gas Properties and specifically Pete Westfall conducted the leasing activities in question on behalf of Hold Oil Corp. and all of the oil and gas leases which are of record in favor of D & W Oil and Gas Properties are and were owned by Hold Oil Corp." The defendants filed a Motion to Dismiss and/or for Summary Judgment alleging that the case was not being prosecuted by the real party in interest. The trial court agreed stating: "Plaintiff James Energy Company is not the real party in interest and that this case must be prosecuted by the lessors." Thereafter, James Energy Co., Lillian Stephenson, Archie Powders and Wilma Powders (collectively plaintiffs) filed an amended petition. The defendants continued to assert that James Energy was not the real party in interest.

The matter was tried to the court. The trial court: (1) found that the pooling order was invalid as to interests of Mitchell, Morse, Durfee, and Norris; (2) refused to cancel the leases finding that the lessors had not fulfilled their duty to give notice to Hold to diligently market the gas and that

the late payment of the shut-in royalties was insufficient to cancel the leases; (3) found that there was no evidence submitted that D & W had assigned its interest in the well to Hold and that D & W's leases had terminated; (4) found that "any cause of action against James Energy for not being the real party in interest or that [its] lawsuit [was] champertous" failed because the fractional mineral interest owners did not understand their rights and needed someone to represent them; and (5) found in favor of Hold on the issues of slander of title and interference with contractual relations and dismissed those actions. The trial court then ordered that James Energy and Hold (HCG) become working interest partners in the well, that Hold recover its costs from the first run, and that the contract with Phillips be maintained. We affirm in part and reverse in part.

On June 1, 1990, the defendants filed a petition in error and, on July 10, 1990, filed an amended petition. Plaintiffs cross appealed. Then on August 29, 1992, the trial court awarded James Energy $8,700 for past operating expenses and allowed for future expenses. The issues presented by the parties can be condensed into four questions: (1) Was this case brought by the real party in interest? (2) Which mineral interests were held by Hold, either by lease or by the forced pooling order, and which were held by James Energy? (3) Were James Energy's tort actions properly denied? (4) Did the trial court have jurisdiction to order Hold's drilling costs be paid from the first runs and James Energy and Hold to become working interest partners? The first question is whether this case was brought by the the real party in interest. Section 2017 of title 12 of the Oklahoma Statutes provides: "Every action shall be prosecuted in the name of the real party in interest." The real party in interest is one who has an interest in the subject matter and "who will be entitled to the benefits of the action if successful." *Maryland Casualty Co. v. King*, 381 P.2d 153, 154 (Okla.1963).

## I.

■ The defendants argue that James Energy was not the proper party to chal-

lenge the validity of the leases held by Hold/HCG or to challenge the pooling order. As to the leases, Hold held two leases in its own name, one from Stephenson and one from the Powders. Both Stephenson and the Powders were plaintiffs in this action. Therefore the challenge to those leases were brought by the real party in interest.

▮▮▮▮ As to the leases in D & W's name and to the pooling order, there is no question that James Energy had an interest in the subject matter since it held leases to those same mineral interests. Further, James Energy would be the "person" benefitting if those leases were cancelled and the pooling order was held to be void. In a quiet title action, the party bringing the action generally has an interest in undermining the title of the opposing party. We agree with the trial court's refusal to dismiss the cause on the grounds that the plaintiffs were not the real parties in interest.

## II.

▮▮▮▮ The second question is which mineral interests were held by Hold by lease and which were held by James Energy. First, we will address whether D & W had executed a valid assignment of its leases to Hold. An oil and gas lease is interest in real property and must be in writing and signed by the party to be charged to be enforceable. *Harris v. Tucker,* 147 Okl. 210, 296 P. 397 (1931); Okla.Stat. tit. 15, § 136 (1981). Where a lease must be in writing, the assignment of that lease must also be in writing. *Woodworth v. Franklin,* 85 Okl. 27, 204 P. 452 (1922). In their brief-in-chief, "[d]efendants agree[d] there was never any formal assignment from D & W to Hold Oil Corp. or HCG of [the] leases [held by D & W]." Therefore, we agree with the trial court's finding regarding the leases held by D & W.

▮▮▮▮ Next, we address the leases which were admittedly held by Hold, the leases from Stephenson and the Powders. Plaintiffs argue that the trial court erred in requiring that the lessor make demand on Hold to produce and market the gas. In Oklahoma, the duty to produce and market is an implied covenant unless specifically stated in the lease. *McVicker v. Horn, Robinson, & Nathan,* 322 P.2d 410, 414 (Okla.1958). An action to cancel an oil and gas lease is an action in equity. *Mitchell v. Amerada Hess Corp.,* 638 P.2d 441, 446 (Okla.1981). It was long ago established that "the *lessor* must demand that an implied covenant be complied with before a court of equity will grant a forfeiture." *Id.* This Court stated the rule in *Hudspeth v. Schmelzer,* 182 Okl. 416, 77 P.2d 1123 (1932):

> In an action to cancel an oil and gas mining lease for breach of an implied covenant, *the owner of the land* must demand that the implied covenant of the lease be complied with and give a reasonable time for such compliance before a court of equity will decree a forfeiture of the oil and gas mining lease.

(Emphasis added.) Therefore, the trial court was correct in ruling that demand by the lessor was a prerequisite to the cancellation of the lease.

▮▮▮▮ In the alternative, plaintiffs argue that Hold did receive demand notice to market the gas. The plaintiffs state that Dayle James advised representatives of HCG that it was claiming an interest in the well. Claiming an interest in the well hardly rises to the level of demand notice to market. Further, the lessor, not a stranger to the lease such as James Energy, must make demand on the lessee to comply with the implied covenants. *Mitchell,* 638 P.2d at 446.

▮▮▮▮ Plaintiffs also contend that the defendants' leases expired by their own terms. The leases held by the defendants in the present case contained habendum clauses stating that the lease was in force for the primary term "and as long thereafter as oil or gas, or either of them, is produced from said land by the leasee." This phrase has been construed by this Court to denote capable of "production in paying quantities." *Mason v. Ladd Petroleum Corp.,* 630 P.2d 1283, 1284 (Okla.1981); *Stewart v. Amerada Hess*

*Corp.*, 604 P.2d 854, 857 (Okla.1980); *Henry v. Clay*, 274 P.2d 545, 545–46 (Okla.1954).

■ Capable of producing in paying quantities means capable of producing in "quantities sufficient to yield a return, however, small, in excess of 'lifting expenses', even though well drilling and completion costs might never be repaid." *Stewart*, 604 P.2d at 857. Dayle James testified that the well was capable of producing in paying quantities when it was completed. Further, the plaintiffs stated in their response brief that "Hold/HCG has not disputed that a profit in excess of expenses was and is available based upon the substantial production volumes exhibited by this Well." The plaintiffs admit that the well was capable of producing in paying quantities. It follows that the leases were held by production and did not expire by their own terms.

■ The plaintiffs cite *Indian Territory Illuminating Oil Co. v. Haynes Drilling Co.*, 180 Okl. 419, 69 P.2d 624 (Okla.1937), in support of their argument that demand to market was not necessary. In that case, this Court stated there are "circumstances under which the giving of notice would be a vain and useless thing and such notice is not necessary." The plaintiffs argue that this exception to the notice requirement applies in the present case. While reciting several facts in support of this argument, they have not presented any facts which show that demand would have been useless. In contrast, the defendants presented evidence that they had made several attempts to sell the gas from the well without success.

Incorporated within the plaintiffs' argument is the contention that defendants intentionally abandoned the lease. The plaintiffs argue that the intent to abandon is readily apparent from the facts. The plaintiffs cite *Hudspeth v. Schmelzer*, 77 P.2d at 1123, in support of the proposition that the defendants intended to abandon the lease. Whether the defendants abandoned the lease is a question of intent to be determined by the circumstances in each case. The facts do not support the plaintiffs' argument. Further the plaintiffs' brief does not set forth the material parts of the record on which they rely as required by Okla.Stat. tit. 12, ch. 15, app. 1, rule 15 (1981).

Plaintiffs also contend that the defendants' leases should be cancelled for failure to act as a reasonably prudent operator and for breach of the implied covenants to produce and market. This proposition is a repeat of the plaintiffs' other arguments which have been addressed and rejected.

■ Also at issue is the validity of the pooling order. The plaintiffs are attempting to void the effect of the pooling order by collateral attack. When a Commission order comes under collateral attack, the district court is limited to an examination of the record of the proceedings involving the order under attack to determine if proper notice was given, even though extrinsic evidence is admissible to determine if a party is entitled to notice, *Anson Corp. v. Hill*, 841 P.2d 583, 586 (Okla.1992).

In *Cravens v. Corporation Comm'n*, 613 P.2d 442, 444 (Okla.1980), this Court stated the requirement of due process:

When the names and address of the parties are known, or are easily ascertainable by the exercise of diligence, notice of pending proceedings by publication service alone, is not sufficient to satisfy the requirement of due process under federal or Oklahoma constitutions.

The trial judge correctly found that, from Exhibit 143, Hold knew or should have known "certain lessors were deceased and who their heirs were." Exhibit 143 is a document entitled "Hold Oil Corp. Detailed Ownership Report" and is dated October 21, 1985. This document lists J.R. Mitchell, Maggie Mitchell, Phillip W. Norris, and Susan Morse Durfee as mineral owners and gives their addresses. The record shows that the criterion of *Cravens*, that is personal notice of these parties, was not met. The trial court properly found that the pooling order of April 17, 1986, did not force pool the mineral interests of Mitchell, Morse, Durfee, and Norris.

The plaintiffs argue that, because proper notice was not given, the pooling order of April 17, 1986 was facially void in its entirety. In *La Bellman v. Gleason & Sanders, Inc.*, 418 P.2d 949, 956 (Okla.1966), this Court held that, "where part of a judgment is void the entire judgment is a nullity by reason thereof...." If the valid and invalid parts of the judgment are independent, then the valid portions will be upheld. *Id.* In the present case, only the parts of the Commission's order relating to the mineral interests of Mitchell, Morse, Durfee, and Norris were void; the remainder of the Commission's order was valid.

### III.

The third question is whether the trial court erred in dismissing the claims for slander of title and tortious interference with contract. The elements of an action for slander of title are: "(1) the uttering and publishing of the slanderous words; (2) that they were false; (3) that they were malicious; (4) that [the plaintiff] sustained special damage thereby; and (5) that [the plaintiff] possessed an estate or interest in the property slandered." *Ward v. Mid–West & Gulf Co.*, 97 Okl. 252, 253–54, 223 P. 170, 171 (1923). Once again, plaintiffs have failed to cite to anything in the record which shows that Hold's statements were false or malicious. As discussed above, Hold had a valid interest in the well which it was protecting. Hold's statements to Phillips were neither false nor malicious.

The elements of malicious interference with a contract are:

1. That [the plaintiff] had a business or contractual right that was interfered with.
2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable.
3. That damage was proximately sustained as a result of the complained of interference.

*Mac Adjustment, Inc. v. Property Loss Research*, 595 P.2d 427, 428 (Okla.1979).

As stated above, Hold had a valid interest in the well; its actions were neither malicious or wrongful. Hold was merely protecting its interest in the well when it contacted Phillips. The trial court properly found against the plaintiffs on the claims for slander of title and tortious interference with contract.

### IV.

The fourth question is whether the trial court lacked jurisdiction to render the judgment that it did. The trial court ordered Hold (HCG) and James Energy to become working interest owners in the well. The court also ordered that Hold recoup the cost of the well from the first runs and, after an appeal had been filed, awarded past and future operating expenses be paid to James Energy. The defendants argue that the trial court did not have jurisdiction to award James Energy operating costs more than thirty days after a petition in error was filed or to name James Energy as operator of the well. The plaintiffs argue that the trial court did not have jurisdiction to order James Energy and Hold to be working-interest owners or to allow Hold to recover its costs for drilling the well out of the first production runs. We agree with the defendants and the plaintiffs that the trial court did not have jurisdiction to name James Energy as operator of the well, to order James Energy and Hold to be working-interest owners, or to issue an order awarding James Energy past and future operating costs.

As stated earlier, the April 17, 1986 Commission order was valid except for force pooling the mineral interests of J.R. Mitchell, Maggie Mitchell, Phillip W. Norris, and Susan Morse Durfee. That order named Hold as the operator of the well and that part of the order was valid. Any modification of that part of the order would have to be rendered by the Commission upon a finding "of a change in or knowledge of conditions necessitating the repeal, amendment or modification of the order." *SKZ, Inc. v. Petty*, 782 P.2d 939 (Okla.1989). Because the trial court improperly designated James Energy as operator, the order

requiring the contract between James Energy and Phillips be maintained was also improper as was the order awarding Hold its costs of drilling.

■ The Petition in Error was filed on June 1, 1990. On August 29, 1990, the trial court awarded James Energy $8,700 for past operating expenses and allowed for monthly draws for future expenses. The filing of an appeal divests the trial court of jurisdiction to make any order materially affecting the rights of the parties subject to the 30–day exception provided in Okla. Stat. tit. 12, § 1031.1 (1981). *Wabaunsee v. Armstrong,* 584 P.2d 222, 223 (Okla.1978). The order awarding James Energy operating costs was made more than 30 days after the appeal was filed and materially affected the rights of the parties. The trial court was without jurisdiction to make such an order.

■ The plaintiffs argue that the trial court exceeded its subject matter jurisdiction by declaring and enforcing an equitable pooling of the leasehold estates. We agree. By ordering James Energy and Hold (HCG) to become working-interest owners in the well, the trial court in effect pooled those interests. The Commission has exclusive jurisdiction to force pool the mineral interest in the spacing unit. Section 87.1(e) of title 52 of the Oklahoma Statutes provides:

> When two or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests ... embraced within such established spacing unit, the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on said unit to the common source of supply, *the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit.*

(Emphasis added.)

■ While the district court was without jurisdiction to order James Energy and Hold to become working-interest owners and the related matters as discussed above, the district court did have jurisdiction to quiet title in the parties. In *Chancellor v. Tenneco Oil Co.,* 653 P.2d 204, 206 (Okla.1982) *overruled on other grounds,* we held that the district court had jurisdiction "to remove a cloud which was created by a void agency order." The part of the district court's order determining the interest held by James Energy and by Hold was correct. Therefore, the district court's judgment is affirmed in part and vacated in part.

DISTRICT COURT'S JUDGMENT IS AFFIRMED IN PART AND VACATED IN PART.

OPALA, C.J., and LAVENDER, SIMMS, HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

### ORDER GRANTING REHEARING FOR LIMITED PURPOSE

The Appellees' Petition for Rehearing is granted for the limited purpose of deleting references to *Harry R. Carlisle Trust v. Cotton Petroleum Corp.,* 732 P.2d 438 (Okla.1986).

The typewritten opinion of this Court filed and promulgated on July 14, 1992, is amended.

Editor's Note: Corrections incorporated in published text.

OPINION MODIFIED ON REHEARING.

All the Justices concur.