Boardman G. **BARBY** and Sondra Barby, husband and wife, SMN Venture, a partnership, Leland D. Barby, co-trustee of the Otto C. Barby trust, and Celestine Barby, Appellants,

v.

Joseph B. **SINGER**, Richard H. Fleischaker, Adeline J. Fleischaker, T. F. Thagard and John L. Crawford, Appellees.

No. 54957.

Supreme Court of Oklahoma.

April 6, 1982.

Rehearing Denied July 20, 1982.

---

1. This is not to say that the order could not have been appealed prior to the 60-day period under 12 O.S.1971 § 952(b) 2 & 3.

Donald R. Liles, Sparks & Liles, Inc., Woodward, for appellants.

James M. Robinson, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellees.

LAVENDER, Justice:

The ultramafic issue presented is whether oil and gas leases covering lands in Beaver County, Oklahoma, providing for a primary term of one year and containing a habendum clause specifying that the lease shall remain in full force "as long thereafter as oil or gas, or either of them, is produced from said land by the lessee," terminated after the primary term had expired for failure to produce at a profit a gas well drilled and completed during the primary term.

Appellants are owners of mineral interests in the leases who brought suit to quiet title against Appellees who are owners of working interests in the leases in question.

In January 1974, and during the primary term, Appellees caused Barby 1–12, a gas well, to be drilled into the Morrow formation, which well has been continuously produced since November 1974, and after the expiration of the primary term.

■ The term "produced," when used in a "thereafter" provision of the habendum clause, denotes in law production in paying quantities. The phrase means that the lessee must produce in quantities sufficient to yield a return, however small, in excess of "lifting expenses," even though well drilling and completion costs might never be repaid.[1]

In *Mason v. Ladd Petroleum Corp., supra,* we further held that in determining whether a well is being produced in paying quantities, only those expenses which are directly related to lifting or producing operations can be offset against production proceeds to determine whether a well is a producer. And in *Stewart, supra,* this Court further said:

"The 'thereafter' clause is hence not ever to be regarded as akin in effect to the common-law conditional limitation or determinable fee estate. The occurrence, of the limiting event or condition does not automatically effect an end to the right. Rather, the clause is to be regarded as fixing the life of a lease instead of providing a means of terminating it in advance of the time at which it would otherwise expire. In short, the lease continues in existence so long as interruption of production in paying quantities does not extend for a period longer than reasonable or justifiable in light of all the circumstances involved. But under no circumstances will cessation of production in paying quantities *ipso facto* deprive the lessee of his extended-term estate.

"A decree of lease cancellation may be rendered where the record shows that the well in suit was not producing in paying quantities and there are no compelling equitable considerations to justify continued production from the unprofitable well operations."

APPROPRIATE TIME PERIOD USED TO DETERMINE WELL'S PROFITABILITY.

■ The period employed to challenge the profitability of the Barby 1–12 was February 1978 to April 18, 1979, the date on which suit was filed. In determining whether there was a cessation of profitable production sufficient to terminate a lease, no distinction is made under Oklahoma law between temporary termination of production, and reduction in production to the degree that the well ceases to be profitable.[2] In either case, the appropriate time period is not measured in days, weeks or months, but by a time appropriate under all of the facts and circumstances of each

1. *Stewart v. Amerada Hess Corp.,* Okl., 604 P.2d 854 (1980); *Mason v. Ladd Petroleum Corp.,* Okl., 630 P.2d 1283 (1981).

2. *Stewart v. Amerada Hess Corp., supra,* p. 858.

case.[3] And being an action of equitable cognizance, the judgment of the trial court will be sustained unless clearly against the evidence.[4] In the case before us, the period employed by the trial court to determine profitability was sufficient under all of the facts and circumstances for a fair and reasonable determination.

WHETHER THE PROSPECT OF AN INCREASE IN THE PRICE OF NATURAL GAS TO RESULT FROM LEGISLATION UNDER CONSIDERATION BY CONGRESS SAVES THE LEASE FROM TERMINATION DURING A PERIOD OF UNPROFITABLE PRODUCTION, AND IF SO, MAY THE RESULTANT PRICE INCREASE BE CONSIDERED RETROACTIVELY FROM THE DATE OF THE APPLICABILITY OF THE PRICE INCREASE IN DETERMINING PROFITABILITY.

During the test period for determining the profitability of the Barby 1–12 well, the United States Congress had under consideration legislation which, if enacted, might result in an increase in the price of natural gas, a fact within the knowledge and contemplation of Appellees. The issue thus presented is whether that prospect, as remote and uncertain as it was, saved the lease from termination during a period when profitability was marginal or even when the lease operated at a loss. As we have heretofore pointed out, the failure of the lease to produce a profit does not in and of itself terminate the lease. Compelling equitable considerations may rescue the lease from termination even when well operations are unprofitable. As we said in *Stewart v. Amerada Hess Corp., supra,* at page 858: "The terms of 23 O.S.1971, § 2 clearly mandate that courts avoid the effect of forfeiture by giving due consideration to compelling equitable circumstances."

Cranston W. Flesher, a petroleum engineer who had been principally engaged in supervision of drilling, completion, operation, and evaluation of oil and gas wells, in testifying at the trial, was asked the following question:

"If you had the Barby 1–12 which was producing a volume of between February and say December of 1978 of 2500 MCF and after you had fooled around with all the costs of that production, overhead expenses, pumpers, paid the royalties, paid production taxes and that type of thing, the well had made somewhere between $200 or plus or loss or $1,300, do you have an opinion whether or not a reasonable prudent operator would plug that well and walk away from it?" After he had testified that he was familiar with the impending legislation which subsequently was passed and labeled the Natural Gas Policy Act, Flesher gave the following answer:

"Yes, I have an opinion. I believe a prudent operator, my recommendation if I were asked would be to upon the passing of that law see how it would affect the income for this unit or this well. I would continue in operation."

■ While the testimony was in conflict with other expert testimony, we hold the evidence was sufficiently substantial to sustain a finding and determination of the trial court and constituted compelling equitable circumstances which justified the continuation of the lease even in the face of temporary unprofitability of the well.

■ The Natural Gas Policy Act was adopted by Congress, effective as of December 1, 1978. Appellees filed an application to qualify the Barby 1–12 as a "stripper" well, resulting in a price increase for the gas produced, retroactive to December 1, 1978. The trial court held that the retroactive price increase was properly to be taken into consideration in determining the well's profitability. We agree. As we said in *Mason v. Ladd Petroleum Corp., supra,* at p. 1285, the real issue is whether a well yields production income in excess of the

**3.** *Stewart v. Amerada Hess Corp., id. ; Cotner v. Warren,* Okl., 330 P.2d 217 (1958); *Hunter v. Clarkson,* Okl., 428 P.2d 210 (1967); *Kerr v. Hillenberg,* Okl., 373 P.2d 66 (1962); *Jath Oil Co. v. Durbin Branch,* Okl., 490 P.2d 1086 (1971); 43 A.L.R.3d, p. 60 et seq.; 100 A.L.R.2d 885.

**4.** *Cotner v. Warren, supra*; *Hunter v. Clarkson, supra*; *Jath Oil Co. v. Durbin Branch, supra.*

cost of the production. The fact that production income was received retroactively does not convert it into something other than what it is, production income. Neither do we hold that the ninety day interval between the effective date of the act and the date of the application for relief thereunder constitutes an unreasonable delay under the facts and circumstances of this case.

The undisputed evidence before the trial court shows that if the increase in the price of natural gas is applied retroactively to the production income from the well, the well produced a profit each month during the test period. Having so determined, it is unnecessary to consider other specifications of error set forth in the briefs.

The decision of the Court of Appeals is hereby withdrawn. It is further ordered that the findings and judgment of the trial court as are hereinabove set forth are affirmed.

IRWIN, C. J., and HODGES, SIMMS, DOOLIN, HARGRAVE, OPALA, and WILSON, JJ., concur.

BARNES, V. C. J., did not participate.