1998 OK CIV APP 193

**Roslyn CRAIN, Individually and as Trustee of the Roslyn Crain Trust; Edith M. Rainwater, Individually and as Trustee of the Edith M. Rainwater Living Trust; LeFlore Land, Cattle and Investment Company; Wood Petroleum Company; Bill Goins, Florence Goins; Warner Baxter; Peggy Baxter; Zimmerman, Inc.; Marilou Burnett–dixon, Bison Gas Company, A Limited Partnership and Noel Nally, Plaintiff/Appellees,**

v.

**HILL RESOURCES, INC.; Robert L. Stephenson, Trustee; Ray Potts, Trustee; Jeanne T. Steele; William E. Richardson; B & T Truck and Tractor; Dalton Investment Co.; Dalton Oil & Gas Co.; John H. Carney and John H. Carney,**

---

Executor; W.G. Irwin; Chickasha Bank & Trust Company; Royden R. Freeland, Jr.; Charles R. Gibson, M.D.; Warren D. Long, Jr.; Robert J. Hayes; William C. Mccurdy, II; Ronald M. Hill; Oklahoma Resources, Inc.; Janice Hill Kubitschek; Pangaea Exploration Corp.; J. Michael Kelly; Paul Silverstein; Guy H. Liebmann; Robert D. Slavin; and J.G. Liebmann, Defendant/Appellants.

No. 89512.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 31, 1998.

Certiorari Denied Dec. 17, 1998.

Stanley A. Leasure, Thomas A. Daily, Todd P. Lewis, Fort Smith, Arkansas, For Plaintiff/Appellees.

Tom M. Moore, John R. Robertson, Jr., Oklahoma City, Oklahoma, For Defendant/Appellants.

## OPINION

HANSEN, J.

¶1 Defendant/Appellants (Lessees) seek review of the trial court's order canceling their oil and gas leases with Plaintiff/Appellees (Lessors). Lessors entered the leases with Lessees' predecessors in interest in 1978 and 1979. Lessees acquired the leases by assignment and drilled two gas wells: the Drummond 31–1 Well, which was completed on October 21, 1979, and the Drummond 32–1 Well, which was completed on March 5, 1980. The wells were never hooked up to a pipeline. On June 3, 1994, Lessors filed suit to cancel the leases on the grounds neither well was capable of producing in commercially paying quantities, or in the alternative, that Lessees failed to comply with the implied covenant to market the gas.

¶2 After a bench trial, the trial court ruled production in paying quantities meant production in quantities sufficient to yield a return in excess of the lifting costs, even though other costs are not repaid. Applying this standard, it found the two wells were capable of producing in paying quantities, and therefore, the leases were held past their primary terms. The trial court then applied a prudent operator standard to determine whether Lessees breached the implied covenant to market, and found they had not diligently sought a market for the product of the wells in the 14 to 15 years since the wells were drilled. In addressing Lessees' defense that adequate demand was not made and they were not given sufficient time to comply, the trial court found Lessees' response to those Lessors who made demand was "meager at best and only for appearances," and therefore demand by the other Lessors would have been useless.

¶3 An action to cancel an oil and gas lease for breach of an implied covenant is of equitable cognizance. *McKenna v. Nichlos*, 193 Okla. 526, 145 P.2d 957, 960 (1944). In reviewing an equity action, we will examine the whole record and will reverse the judgment of the trial court only if it is against the clear weight of the evidence or is contrary to established principles of equity. *Southard v. MacDonald*, 1961 OK 72, 360

P.2d 940, 945. See also *Danne v. Texaco Exploration and Production Inc.*, 1994 OK CIV APP 138, 883 P.2d 210, 217, and *Barby v. Singer*, 1982 OK 49, 648 P.2d 14, 17.

¶4 An oil and gas lease may be terminated for breach of the implied covenant to market the product. *Danne v. Texaco Exploration and Production Inc. (Danne)*, 1994 OK CIV APP 138, 883 P.2d 210, 216. The lessee's performance under the covenant is tested by a reasonable diligence standard. *McVicker v. Horn, Robinson and Nathan*, 1958 OK 49, 322 P.2d 410, 414. However, before a court of equity will grant a forfeiture, the lessor must demand the implied covenant be complied with and give reasonable time for compliance. *James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, 847 P.2d 333, 338. The reasonableness of the demand and time for compliance is a question of fact to be determined from the circumstances of each case. *Lyons v. Robson*, 1958 OK 232, 330 P.2d 593, 596. Demand may be excused when it "would be a vain and useless thing." *Indian Territory Illuminating Oil Co. v. Haynes Drilling Co.*, 180 Okla. 419, 69 P.2d 624, 630 (1937). See also *James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, 847 P.2d 333, 339, and *Hitt v. Henderson*, 112 Okla. 194, 240 P. 745, 748 (1925).

¶5 Lessees contend the trial court's judgment was both based on an incorrect legal standard and against the weight of the evidence. They argue the trial court erroneously focused on the time period between completion of the wells and the date of suit instead of the 41–day period after Lessors' demand to market gas and before Lessors' counsel demanded release of the leases. We need not consider this argument because the trial court found demand would have been a vain and useless exercise, and we conclude that determination is not against the clear weight of the evidence.

¶6 Lessees contend the trial court's order was against the weight of the evidence because the undisputed evidence showed the operator, Hill Resources, "continually attempted to find a satisfactory market for gas from these Wells," both before and after

receiving demand, until excused from further effort by the letter from Lessors' counsel notifying them suit would be filed unless Lessees released the leases. In particular, Lessees cite the actions of Irving Hill of Hill Resources to market the gas after receiving demand. He sent a letter to Mike Callan of Arkansas Oklahoma Gas Company (AOG) seeking a gas purchase contract and requesting a meeting. Callan responded with a letter transmitting copies of AOG's standard gas purchase and transportation contracts. Hill reviewed the contracts and made notes regarding them. Through further contacts with Callan, both by phone and in person, Hill learned AOG would not purchase the gas but would offer a transportation contract. He testified he had some problems with the transportation agreement but thought they could be worked out. Hill sought and received estimates of the costs to hook up the wells to AOG's pipelines and to compress the gas. He contacted Aquila Energy Marketing regarding whether they would purchase the gas and received a letter from them advising of their purchasing terms.

¶ 7 On the question of whether Lessees acted with reasonable diligence, this evidence, although uncontroverted, does not outweigh the sheer passage of time, i.e., 14 to 15 years, with no benefit to the Lessors. We hold the trial court's finding Lessees breached the implied covenant to market gas is not against the clear weight of the evidence.

¶ 8 This same evidence supports the conclusion that demand was not required because Lessees had exhibited no serious intention to market this gas. In *Hitt v. Henderson*, 112 Okla. 194, 240 P. 745, 748 (1925), the Court relied upon a similar disinterest in developing an oil and gas lease shown by not drilling a well despite production all around for over 13 years by and concluded "the attitude of the defendant in the instant case was such, we think, as to make a demand to develop the property unnecessary." We cannot say the trial court's decision that a demand would have been useless is against the clear weight of the evidence.

¶ 9 Lessees contend they did not have a reasonable period of time to market the gas after demand was made and the trial court should have granted them an alternative decree to market the gas within a reasonable period of time or else forfeit the lease. In light of Lessors's failure for 15 years to market the gas, we cannot say the trial court abused its discretion in denying that request or that its determination was against the clear weight of the evidence.

The judgment of the trial court is **AFFIRMED.**

ADAMS, J., and BUETTNER, P.J., concur.