2001 OK CIV APP 100

Ruth B. BENSON, surviving daughter and next of kin of Edd A. Robbins, deceased, Plaintiff/Appellant,

v.

Stephen TKACH, M.D.; Bone and Joint Hospital (trade name for Oklahoma Orthopedic and Arthritis Foundation); HealthSouth Rehabilitation Hospital (trade name for HealthSouth of Oklahoma, Inc., a Deleware corporation); McBride Clinic, Inc., an Oklahoma Corporation; and Does One Through Four, Defendants/Appellees.

No. 94,640.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 20, 2001.

Rehearing Denied April 23, 2001.

Certiorari Denied July 3, 2001.

M. Michael Arnett, C. Ronald Britton, Arnett Law Firm, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Stephen Peterson, Taylor J. Wyand, Fenton, Fenton, Smith, Reneau & Moon, for Defendant/Appellee, Oklahoma City, Oklahoma, Bone and Joint Hospital.

Christy L. Butler, John R. Paul, The Paul Law Firm, Tulsa, Oklahoma, for Defendant/Appellee Healthsouth Rehabilitation Hospital.

Robert C. Margo, L. Earl Ogletree, Short, Wiggins, Margo & Butts, Oklahoma City, Oklahoma, for Defendants/Appellees,Stephen Tkach, M.D., and McBride Clinic, Inc.

TAYLOR, Judge:

¶1 In this medical malpractice action, Plaintiff, Ruth Benson, appeals the trial court's denial of her motion to reconsider following its grant of summary judgment in favor of defendants, Dr. Stephen Tkach, Bone and Joint Hospital, Healthsouth Rehabilitation Hospital, and McBride Clinic, Inc. Based on the record and applicable law, we reverse and remand.

¶2 Plaintiff is the daughter of Edd A. Robbins. In October 1994, Mrs. Robbins underwent hip replacement surgery. The surgery was performed by Dr. Tkach (who Plaintiff asserts is an employee of McBride Clinic) at Bone and Joint Hospital. Mrs. Robbins was later transferred to Healthsouth Rehabilitation Hospital for rehabilitation. After the surgery, Mrs. Robbins developed an infection and died on June 11, 1995.

¶3 Plaintiff filed a malpractice lawsuit. She asserted Defendants acted negligently, causing Mrs. Robbins pain and suffering and, ultimately, her death. Defendants filed motions for summary judgment, and Plaintiff dismissed her case without prejudice to refiling.

¶4 Plaintiff refiled her petition, and again Defendants sought summary judgment. Defendants asserted they were entitled to summary judgment because Plaintiff had failed to produce any expert testimony in support of her allegations. Defendants submitted affidavits from Dr. Tkach and Healthsouth's director of nursing denying any negligence.

¶5 Plaintiff filed a response, attaching two affidavits. One was from an Arizona physician, Dr. Vadee Kroft. His affidavit, in its entirety, stated:

My name is Vadee Kroft, M.D., and I am a physician residing at 2000 Camino Rancho, Sierra Vista, Arizona. I am a graduate of the University of Arkansas School of Medicine and have practiced in Arkansas and also in Arizona.

I also am knowledgeable of the applicable standards and procedures for the medical practitioners, nursing facilities and hos-

pitals involved in the treatment and care of the deceased, Edd Robbins. After reviewing the above referenced case involving the deceased Edd Robbins, it is my professional opinion that the defendants named in this lawsuit breached the standards of care owed to the deceased, Edd Robbins. Further the negligence and breaches of standards of care owed the deceased, Edd Robbins, by these defendants, proximately caused the death of Edd Robbins.

Further Affiant sayeth not.

¶ 6 Plaintiff also attached her own affidavit, in which she states:

A few days after her left hip was removed, my mother was transferred to Healthsouth Rehabilitation Hospital. The arrangements were made by Bone and Joint Hospital. While at Healthsouth Rehabilitation Hospital, my mother, Edd Robbins, was conscious and complained all the time of great pain, in the area of the surgery. Her wound from the surgery was draining. I trusted Dr. Tkach, McBride Clinic, and Healthsouth and Bone and Joint Hospital to provide the proper care to my mother. A few days after my mother was transferred to Healthsouth Rehabilitation Hospital, I observed her when I came in to visit sitting unattended in a wheelchair saturated from the waist down from drainage coming from her surgical wound. I was upset and pointed out this condition to the staff at Healthsouth. My mother was in agony from her pain.

Thereafter, she was transferred back to Bone and Joint Hospital and Dr. Tkach and other members of McBride Clinic treated her. They performed more surgery on her by opening up the hip again and cleaning the area. Anticiotics [sic] were administered through a tube. Again, I trusted Dr. Tkach, the McBride Clinic staff that the care given my mother was appropriate to stop the infection. My mother continued to suffer greatly from her left hip and upon several occasions, I asked Dr. Tkach about replacing the left hip joint, or at least removing it so the infected area could heal. Dr. Tkach refused to do so and stated that "Medicare had his hands tied," which told me he would not remove the source of the infection because there was no money to pay for the surgery.

¶ 7 Defendants filed replies, asserting Dr. Kroft's affidavit failed to include qualifying statements and specific allegations of negligence, and thus was insufficient to avoid summary judgment. Defendants also asserted Plaintiff's affidavit was insufficient to establish malpractice because Plaintiff was not a medical expert.

¶ 8 The trial court granted Defendants' motions for summary judgment. Plaintiff filed a motion to reconsider, reasserting that her affidavits created a substantial controversy as to material facts. The trial court denied her motion. Plaintiff appeals.

¶ 9 Summary judgment should be granted only where it is clear there is no substantial controversy as to any material fact, and should be denied if facts are conflicting, or if reasonable people, in the exercise of fair and impartial judgment, might reach different conclusions concerning an issue. *First Nat'l Bank & Trust Co. of Vinita v. Kissee*, 1993 OK 96, 859 P.2d 502. Plaintiff's motion to reconsider is the functional equivalent of a motion for new trial, *see Horizons, Inc. v. Keo Leasing Co.*, 1984 OK 24, 681 P.2d 757 ; therefore, our standard of review here is abuse of discretion, *Graves v. Lewis*, 1958 OK 176, 327 P.2d 672.

¶ 10 Normally, when a patient sues a physician for failure to properly diagnose or treat the patient, the issue of fact is one of science and must be established and determined upon the testimony of skilled, professional witnesses. *White v. Burton*, 1937 OK 381, 71 P.2d 694 (syllabus 1 by the court). In other words, the rule in medical malpractice cases is that a physician's negligence must ordinarily be established by expert medical testimony. *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, n. 30, 948 P.2d 298. A plaintiff has the burden of proving through expert testimony: (1) the standard of medical care required of physicians, (2) that a duty existed and was breached, and (3) that this breach of duty resulted in harm to the plaintiff. *See Grayson v. State*, 1992 OK CIV APP 116, ¶¶ 12–13, 838 P.2d 546, 549.

¶ 11 Plaintiff essentially asserts she has satisfied this rule by introducing Dr. Kroft's affidavit, in which he generally opines that all the defendants were negligent and all caused Plaintiff's mother's injury. We hold that the affidavit is not sufficient to satisfy the rule.

¶ 12 In *Grayson*, the plaintiff's only expert opined that the patient died in the hospital of a drug overdose. In holding that the trial court had correctly sustained the defendants' demurrers, the Court of Civil Appeals observed:

> There is a total lack of evidence, however, in the instant case showing the required standard of care, [or breach or causation].... [The expert witness] failed to give an opinion as to what type of care would come within the national standard of care [which is used to measure the appropriate standard of care of physicians in Oklahoma], or the care which would be insufficient to meet that standard.

*Id.* at ¶ 13, 838 P.2d at 550.

¶ 13 Similarly, Plaintiff has failed to produce any evidence showing the required standard of care. The rationale for this rule is that a trier of fact must have sufficient technical and scientific testimony at its disposal to answer a scientific and technical question of fact. *Boxberger v. Martin*, 1976 OK 78, ¶ 14, 552 P.2d 370, 373. Dr. Kroft's blanket statement opining liability, without providing any information as to the required standard of care, and without offering any reason for his conclusions, is simply not sufficient to satisfy the rule. In regard to the affidavit's failure to offer reasons, the Oklahoma Supreme Court has recognized that:

> The reasons given in support of the opinions rather than the abstract opinions are of importance, and the opinion is of no greater value than the reasons given in its support. If no rational basis for the opinion appears, or if the facts from which the opinion was derived do not justify it, the opinion is of no probative force, and it does not constitute evidence sufficient to authorize submission of the issue to the jury....

*Downs v. Longfellow Corp.*, 1960 OK 107, 351 P.2d 999 (quoting 32 C.J.S. Evidence § 569).

We conclude Dr. Kroft's affidavit is insufficient to satisfy the rule.

¶ 14 However, we nonetheless agree with Plaintiff that summary judgment is inappropriate. While expert testimony is *ordinarily* required in cases involving medical negligence, courts have made exceptions to that rule. In *Boxberger*, 1976 OK 78, ¶ 14, 552 P.2d at 373, after referring to the rule requiring expert medical testimony, the Oklahoma Supreme Court explained, "for every rule of law there must be a rational reason. It is obvious that the trier of fact must have sufficient technical and scientific testimony at his disposal to answer a scientific and technical question of fact." However, "when a physician's lack of care has been such as to require only common knowledge and experience to understand and judge it, expert medical testimony is not required to establish that care." *Id.* The court explained that the need for expert testimony is limited to establishing an appropriate standard of care; however, the court also stated that an expert opinion may be necessary to show the proper standard of care. *Id.* at ¶¶ 14, 17, 552 P.2d at 373–74. The court did not state that expert testimony is always necessary to show the appropriate standard of care.

¶ 15 According to Plaintiff's affidavit, Dr. Tkach refused to perform additional surgery to allow her mother's infected area to heal because, " 'Medicare had his hands tied,' which told me he would not remove the source of the infection because there was no money to pay for the surgery." Reasonable persons could infer from this remark and the surrounding circumstances that Dr. Tkach did not provide what he considered proper treatment because of financial considerations.

¶ 16 In some respects, the instant case is similar to *Robertson v. LaCroix*, 1975 OK CIV APP 14, 534 P.2d 17, which also involved a medical malpractice lawsuit and a statement from a doctor regarding a patient's treatment. There, the plaintiff testified the doctor told her "he just made a mistake and got over too far" during surgery. The Court of Civil Appeals held that statement constituted an extrajudicial admission of negligence tending, when combined with additional evidence, to establish causation. *Id.* at

¶¶ 24–26, 534 P.2d at 22. The Court further held that the plaintiff had sustained her burden of producing expert evidence establishing the medical standard in the community, because the statement adequately established the prevailing standard of medical practice. *Id.* at ¶ 27, 534 P.2d at 22. The Court reversed the trial court's decision granting a demurrer, and remanded the matter for a new trial.

¶ 17 In *Robertson*, there was additional evidence tending to show causation. Nevertheless, we view Dr. Tkach's statement as an extrajudicial admission of negligence. Reasonable persons could conclude from the statement that Dr. Tkach failed to provide Plaintiff's mother with what he considered proper treatment. We hold the trial court abused its discretion in failing to grant Plaintiff's motion to reconsider the grant of summary judgment as to Dr. Tkach and McBride Clinic.

¶ 18 As to the remaining defendants, Bone and Joint Hospital and Healthsouth Rehabilitation Center, the court in *Boxberger*, 1976 OK 78, ¶ 15, 552 P.2d at 374, also stated, quoting *Barnett v. Richardson*, 1966 OK 101, ¶ 4, 415 P.2d 987, 990:

> Where an injury is patent, objective rather than subjective, the plaintiff is competent to testify as to the injury, the treatment received therefor, and the reaction of such treatment, and this testimony is sufficient for the jury to render a verdict . . . and no expert medical testimony is necessary.

Similarly, in *Turney v. Anspaugh*, 1978 OK 101, ¶ 20, 581 P.2d 1301, 1307, the court stated, "expert testimony is not required where negligence is so grossly apparent that laymen would have no difficulty in recognizing it." In *Turney*, a patient who had undergone a hysterectomy later developed abdominal pains, incision discharge, and a lump below the umbilicus. When the surgeon who had performed the procedure dismissed the patient's complaints, she went to another doctor. That doctor x-rayed the patient and discovered that a surgical sponge had been left inside her body.

¶ 19 The plaintiff brought a medical malpractice action against the first surgeon, and the jury rendered a verdict in the plaintiff's favor. On appeal, the surgeon alleged reversible error on the ground that the patient had provided no expert testimony about the proper standard of care the surgeon should have followed in post-operative treatment. In affirming the jury verdict, the court stated:

> Here, with the surgeon having just performed a hysterectomy using an abdominal approach, the discovery and noting of a hard lump near the umbilicus, complaints of the patient after the operation, . . . subsequent discovery of the sponge through x-ray and of its removal by another doctor, no use of x-ray post-operatively though a known technique for detecting a sponge remaining internally after an operation, *only common knowledge and experience is required to understand and judge any lack of care by the physician.*

*Id.* at ¶ 21, 581 P.2d at 1308 (emphasis added).

¶ 20 *Boxberger* and *Turney* are instructive in the instant case. In her affidavit, Plaintiff attested that prior to the surgery on her mother's hip, she was not suffering from infections or receiving medication for infection, but that, *after* the surgery and the transfer to Healthsouth, the wound began to drain and the decedent was in great pain. Plaintiff stated:

> A few days after my mother was transferred to Healthsouth Rehabilitation Hospital, I observed her when I came in to visit sitting unattended in a wheelchair saturated from the waist down from drainage coming from her surgical wound. I was upset and pointed out this condition to the staff at Healthsouth. My mother was in agony from her pain.

Plaintiff further stated that, in spite of subsequent corrective surgery, her mother continued to suffer great pain until her death.

¶ 21 Based upon Plaintiff's testimony, reasonable persons could conclude that the failure of Bone and Joint Hospital and Healthsouth Rehabilitation Hospital to provide proper

medical treatment constituted gross negligence. The decedent's injury was so apparent and objective that expert testimony was not necessary for the issue of negligence to reach the jury.

¶ 22 We therefore hold that the trial court abused its discretion in granting summary judgment to the defendants. The grant of summary judgment is reversed, with the cause remanded for further proceedings.

¶ 23 REVERSED AND REMANDED.

¶ 24 RAPP, P.J., and COLBERT, J., concur.