2011 OK CIV APP 39

**CONCORDE RESOURCES CORPORATION, Plaintiff/Appellant,**

v.

**KEPCO ENERGY, INC., Williams Production Mid–Continent Company, Mahalo Energy (USA), Inc., Defendants/Appellees,**

Pyle, Carey and Collie, Inc., Smith, Smith and Smith, a general partnership, and Nancy Jackson Dawson, Defendants.

No. 107,129.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 23, 2011.

---

Donald W. Henson, Okmulgee, Oklahoma, for Plaintiff/Appellant, Concorde Resources Corporation.

Gregory L. Mahaffey, Travis P. Brown, Raven V. McNeal–Noumane, Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee, Kepco Energy, Inc.

Stephen W. Elliott, Kline Kline Elliott & Bryant, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee, Mahalo Energy (USA), Inc. [now Redbud E & P, Inc.].

Mark Banner, Chace W. Daley, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Defendant/Appellee, Williams Production Mid–Continent Company.

KEITH RAPP, Judge.

¶1 The plaintiff, Concorde Resources Corporation (Concorde), appeals an order granting summary judgment to the defendants, Kepco Energy, Inc. (Kepco), Williams Production Mid–Continent Company (Williams), and Mahalo Energy (USA), Inc. (Mahalo), and to the defendants, Pyle, Carey & Collie, Inc. (PCC), Smith, Smith and Smith, a general partnership (Smith) and Nancy Jackson Dawson (Dawson).[1] This appeal proceeds under the provisions of Okla. Sup.Ct. Rule 1.36, 12 O.S. Supp.2010, ch. 15, app. 1.

---

1. PCC, Smith and Dawson are listed here as defendants only. Kepco, Williams and Mahalo are listed as appellees and when referenced here as a group will be denominated "Appellee." By

Order *Nunc Pro Tunc,* the trial court ruled that its judgment applied in favor of all trial court defendants, finding them to be aligned in interest. This specific ruling has not been appealed.

## BACKGROUND

¶ 2 PCC, Smith and Dawson, or their predecessors, had previously leased mineral rights to another party and a gas well was drilled in 1981, which was shut-in in 1982. The well was originally named Pyle # 1 and renamed the Connors # 1. Concorde acquired this lease ("Original Lease") and in 1990, Concorde acquired new oil and gas leases from PCC, Smith and Dawson, or their predecessors in title (New Leases).

¶ 3 In 1990, Concorde deepened the well. From that time to 2008, Concorde did not perform any other activities in connection with the well and expended no funds for operation or maintenance of the well. From 1990 to July of 2008, Concorde sold no gas from Connors # 1. Also, Concorde did no further exploration.[2]

¶ 4 Concorde states, without contradiction, that there was no pipeline connection available until July 2008. Concorde states that annual shut-in royalties were paid or tendered from 1993 to 2007.[3] Since July 2008, according to the appellate record, Concorde sold gas from the well in at least July, August and September of 2008, in an amount of approximately $24,000.00.

¶ 5 In 2006, Kepco, and in 2007, Williams and Mahalo acquired oil and gas leases to the same properties as leased by Concorde.[4] This resulted in a lawsuit filed by Concorde to quiet title and to obtain damages against only Kepco, Williams and Mahalo. Kepco,

Williams and Mahalo counterclaimed to adjudicate Concorde's leases as expired and to quiet their respective titles.

¶ 6 Williams, alone, and Kepco and Mahalo, jointly, moved for summary judgment.[5]

¶ 7 Williams first contended that the New Leases acquired by Concorde had expired by their own terms because Concorde had not commenced drilling or commenced reworking operations for an existing well, which Williams asserts is required by the New Leases.[6] Concorde's response is that its New Leases are for primary terms and the "continuous drilling" clause relates to the problem occurring when a lessor has begun drilling, but did not complete the operation before the primary term expired. Concorde argued that such clauses provide the opportunity to complete an operation notwithstanding expiration of the primary term.

¶ 8 All Appellees maintained that the New Leases expired because Concorde did not show that the only existing well was capable of producing in paying quantities. Concorde disputed this assertion. Concorde provided an affidavit that its employee checked the well over time and it always had pressure and the Appellees' information about pressure was erroneous because the well was turned off when they checked it. Concorde also provided an early estimate of reserves. Concorde also maintained that sales of gas in 2008, demonstrated the well's capability of production in paying quantities.

2. Concorde does not dispute its inactivity. *See* Concorde's Brief In Response, Record, Tab 11, pp. 2–3.

3. Smith's Answer in the lawsuit admits receipt of the shut-in royalty payment. Kepco, Williams and Mahalo did not dispute the fact of the payments.

4. In effect, these are akin to "top leases," which are leases that take effect only if the pre-existing lease should expire or be terminated. *See, Smith v. Marshall Oil Corp.*, 2004 OK 10, 85 P.3d 830 n. 4.

5. Although Williams filed separately, the legal positions of all three moving parties coincide with each other as to two contentions.

6. Williams first contention appears to be addressed only to the New Leases. Williams surmises that Concorde officials must have believed

that the original leases had expired because it acquired the New Leases. However, the record does not provide any materials to ascertain what may have been believed. This Court notes that all defendants listed the New Leases as a separate category of leases, which Williams named "Invalid Leases" and Kepco and Mahalo named "Expired Leases." This Opinion will use "New Leases" to refer to the leases acquired by Concorde in 1990 and "Original Lease" for the lease acquired by Concorde. The defendants mentioned the Original Lease separately. However, this Court notes that in Interrogatory No. 2 propounded to Concorde, Concorde was asked to identify the lease or leases through which it claimed an interest. Record, Tab 9, Ex. 3. In response, Concorde listed only the New Leases. The Record on appeal is silent regarding the status of the 1981 lease acquired by Concorde.

¶ 9 Last, all Appellees asserted that the New Leases were forfeited for breach of the Implied Covenant to Market for approximately seventeen years. Concorde argued that: (1) there was no pipeline or source to market the gas; (2) it was excused from the covenant by paying shut-in royalty; and (3) no demand was made by the lessees. The Appellees characterize a 1991 letter from Smith as a demand letter where Smith asked for a release if Concorde was not going to do any more work on the well. The Appellees also argued that a demand was not required because of the length of time involved.

¶ 10 The trial court granted summary judgment by order which was amended to include all trial court defendants.[7] The original journal entry did not recite any findings or conclusions. Concorde appeals.

## STANDARD OF REVIEW

¶ 11 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924, 926. When reviewing the grant of summary judgment, this Court must view all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the party opposing the motion. *Id.*

¶ 12 Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: "whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Therefore, the standard of review on appeal is *de novo*. *Id.*

## ANALYSIS AND REVIEW

### A. Whether The Well Drilled Under The Old Lease Will Hold The New Leases.

■ ¶ 13 As noted above, Concorde did not list the Old Lease as a basis for claiming any interest. Nevertheless, Concorde relies upon the fact that a well had been drilled under the Old Lease and was in place when it acquired its New Leases. Concorde maintains that this well was capable of producing in paying quantities and therefore satisfied the provisions of its New Leases so that the New Leases would remain in effect during the primary term "and as long thereafter as oil or gas, or either of them, is produced from said lease by the lessee."

■ ¶ 14 Williams, the proponent, cites no authority in its summary judgment motion for the proposition that an existing well cannot hold a new lease, if that well meets the criteria for holding a lease. Moreover, the function of a lease's "continuous drilling clause," such as the one in Concorde's leases and referenced by Williams, is to allow completion of work commenced, but not finished, during the primary term. *Steinkuehler v. Hawkins Oil and Gas, Inc.*, 1986 OK CIV APP 9, ¶ 11, 728 P.2d 520, 522 (Rapp, J. Concurring).

¶ 15 Therefore, Williams argument on this point is rejected. In addition, this contention cannot form the basis for entry of summary judgment because Williams has not demonstrated that it is entitled to judgment as a matter of law, which is a requisite for summary judgment. Rule 13(e), Rules For District Courts, 12 O.S. Supp.2010, 12 O.S. ch. 2, app.[8]

### B. Whether New Leases Expired For Not Being Capable Of Production In Paying Quantities.

■ ¶ 16 The New Leases contain habendum clauses that provide for secondary

---

**7.** Order *Nunc Pro Tunc;* Appellate Record. The trial ruled that the interests of PCC, Smith and Dawson were aligned with the interests of the remaining defendants. The ruling has not been appealed. This Court notes that the appellate record does not indicate any pleading by PCC or Dawson and that Smith asked for declaratory judgment regarding validity of the New Leases and the Appellees' leases.

**8.** On November 1, 2009, and subsequent to the decision below, 12 O.S. Supp.2010, § 2056, concerning summary judgment became effective. Rule 13, Rules For District Courts, 12 O.S. Supp. 2009, ch. 2, app. was then applicable and remains in the Rules.

terms "as long thereafter as oil or gas, or either of them, is produced." The terms "produced" and "produced in paying quantities" have substantially the same meaning. *Pack v. Santa Fe Minerals*, 1994 OK 23, ¶ 8, 869 P.2d 323, 326. The meaning of that phrase is set out in *Smith v. Marshall Oil Corp.*, 2004 OK 10, ¶ 9, 85 P.3d 830, 833.

> In the state of Oklahoma, when the term "produced" is used in a "thereafter" provision of an habendum clause, its meaning is that of "production in paying quantities." Production in paying quantities is a term defined by Oklahoma case law to mean "production of quantities of oil and gas sufficient to yield a profit to the lessee over operating expenses, even though the drilling costs or equipping costs are never recovered, and even if the undertaking as a whole may result in a loss to the lessee." The phrase denotes a return in excess of "lifting expenses," costs associated with lifting the oil from the ground after the well has been drilled (citations omitted).

¶ 17 At this juncture of the analysis, the focus is upon the *ability* of the well to produce in paying quantities rather than actual production. *Pack*, 1994 OK 23, ¶ 10, 869 P.2d at 327. Moreover, this focus is shaped by the summary judgment standard of review. Here, Williams, Kepco and Mahalo point to the total absence of production of any sort for seventeen years, together with their assessment of the physical condition of the equipment and lack of well pressure. Concorde disputes the Appellees' characterization of the physical condition of the well equipment and maintains that the well did, in fact, have sufficient pressure. Concorde submitted its reserves estimate. Concorde also argued that the fact it produced and sold approximately $24,000.00 of gas in three months, in 2008, shows that the well was capable of production in paying quantities.

¶ 18 This Court concludes that there are questions of fact regarding the ability of the well to produce in paying quantities. Thus, summary judgment cannot stand on the ground that the well was incapable of producing in paying quantities and the Concorde leases, therefore, expired.

### C. Whether The New Leases May Be Cancelled For Breach Of The Implied Covenant To Market.

¶ 19 Continuation of a lease where the well is capable of production in paying quantities is subject to any violation of the implied covenant to market or to any violation of other express conditions, such as a shut-in royalty clause.[9] Thus, the capability of production alone, however, without a significant attempt to market the product, will not suffice to hold the lease because there is an implied covenant to market the product with due diligence. *Pack*, 1994 OK 23, ¶ 20, 869 P.2d at 329; *Danne v. Texaco Exploration and Production Inc.*, 1994 OK CIV APP 138, ¶ 24, 883 P.2d 210, 217 (Rapp, J. concurring).

¶ 20 Here, the Appellees have not asserted violation of a shut-in royalty clause.[10] Smith, the only lessor shown in the appellate record as filing an answer, admits receipt of shut-in royalty. Concorde submitted its record showing tender of the shut-in royalty payments.

¶ 21 Thus, at this point, the case presents the question of whether the Appellees can prevail on summary judgment on their counterclaim on the breach of implied warranty to market theory. Appellees have the same burden as a plaintiff moving for summary judgment. In that regard, Appellees have shown a total absence of marketing for a seventeen year period. Concorde's response is twofold: There was no pipeline and no

---

9. Many cases involving the application of the implied covenant to market include a fact situation where the well had produced and then production ceased for a period of time. Here, Concorde never produced any product for seventeen years. For purposes of this appeal, this Court finds no legal distinction and concludes that the implied covenant to market applies whether there has not been production from a well capable of production or whether there has been a cessation of production.

10. Appellees have also not argued any theory of breach of an implied covenant to develop the lease.

owner made demand during this period without production.[11]

■ ¶ 22 An action to cancel an oil and gas lease for breach of an implied covenant presents a case of equitable cognizance. *Smith,* 2004 OK 10, ¶ 8, 85 P.3d at 833; *Crain v. Hill Resources, Inc.,* 1998 OK CIV APP 193, 972 P.2d 1179. In *Crain,* a case involving a trial on the merits, the Court provided the applicable criteria.

An oil and gas lease may be terminated for breach of the implied covenant to market the product. *Danne v. Texaco Exploration and Production Inc. (Danne* ), 1994 OK CIV APP 138, 883 P.2d 210, 216. The lessee's performance under the covenant is tested by a reasonable diligence standard. *McVicker v. Horn, Robinson and Nathan,* 1958 OK 49, 322 P.2d 410, 414. However, before a court of equity will grant a forfeiture, the lessor must demand the implied covenant be complied with and give reasonable time for compliance. *James Energy Co. v. HCG Energy Corp.,* 1992 OK 117, 847 P.2d 333, 338. The reasonableness of the demand and time for compliance is a question of fact to be determined from the circumstances of each case. *Lyons v. Robson,* 1958 OK 232, 330 P.2d 593, 596. Demand may be excused when it "would be a vain and useless thing." *Indian Territory Illuminating Oil Co. v. Haynes Drilling Co.,* 180 Okla. 419, 69 P.2d 624, 630 (1937). *See also James Energy Co. v. HCG Energy Corp.,* 1992 OK 117, 847 P.2d 333, 339, and *Hitt v. Henderson,* 112 Okla. 194, 240 P. 745, 748 (1925).[12]

*Crain,* 1998 OK CIV APP 193, ¶ 4, 972 P.2d at 1181.

¶ 23 In *Crain,* the Court affirmed cancellation of the leases where the trial evidence demonstrated that the lessee did nothing for 14–15 years to market the gas from a well found to be capable of producing in paying quantities. In *Crain,* some of the lessees had made demand and the trial court found that the response was "meager at best and only for appearances" and excused the demand from the other lessors as being useless. However, the lessee did undertake efforts to market the gas after the demand was made.[13]

¶ 24 The *Crain* Court analyzed the case under the equity standard of review because there had been a trial on the merits. Here, according to the summary judgment standard of review, this Court may not weigh the evidence and affirm the judgment of the trial court unless clearly against the weight of the evidence or contrary to law. The *Crain* Court concluded:

On the question of whether Lessees acted with reasonable diligence, this evidence, although uncontroverted, does not outweigh the sheer passage of time, i.e., 14 to 15 years, with no benefit to the Lessors.[14] We hold the trial court's finding Lessees breached the implied covenant to market gas is not against the clear weight of the evidence.

*Crain,* 1998 OK CIV APP 193, ¶ 7, 972 P.2d at 1182.

¶ 25 A similar fact situation arose in an appeal of a summary judgment cancelling leases in *Geyer Brothers Equipment Co. v.*

**11.** In 1991, Smith wrote Concorde advising that the lease was about to expire. Williams' Motion For Summary Judgment, Ex. 6, Tab 1, Supplement to Record on Appeal. The letter continued:
We have not heard from you regarding the property. If no work has been accomplished on this site, will you please send us your release on same.
The Mahalo/Kepco motion for summary judgment includes an exchange of correspondence in March 2008, between counsel for Mahalo and counsel for Concorde. Mahalo's counsel demanded that Concorde release the New Leases on the ground that they had expired. Mahalo/Kepco summary judgment motion. Record, Tab 10, Ex. G. The context of the demand letter indicates that the bases for expiration are nonproduction and failure to market the gas. It is undisputed that Concorde began marketing gas in July 2008.

**12.** *Hitt v. Henderson,* was abrogated on other grounds. *Melcher v. Camp,* 1967 OK 239, 435 P.2d 107.

**13.** This is similar to the present case where Mahalo's counsel demanded releases in March of 2008 and marketing began in July 2008. However, the recitals of fact in *Crain* do not indicate that actual marketing and sales had occurred.

**14.** The reference to "this evidence" is to a series of letters, telephone calls and personal contacts by the lessee's official after lessor's demand to market the gas.

*Standard Resources, L.L.C.,* 2006 OK CIV APP 92, 140 P.3d 563.[15]  Geyer had acquired ten leases between 1982 and 1998.  One shut-in gas well was on the property, completed in 1985.  For purposes of summary judgment review, the well was found to be capable of producing in paying quantities.  This brought the review to the issue of Geyer's failure to market the gas.

¶ 26 Geyer had not marketed the gas.  It claimed, as equitable considerations, that there was no pipeline and a dispute existed over which parties held valid leases.  The Court found that the evidence established that Geyer had not actively attempted to market the gas or to secure a pipeline.  The *Geyer* Opinion did acknowledge that the absence of a pipeline was an equitable consideration operating against the conclusion that Geyer breached the implied marketing covenant.  Moreover, Geyer took no real steps to resolve the legal conflicts regarding which party held valid leases.  Thus, the length of time, almost twenty years, without reasonable efforts to market and resolve legal issues suffice to sustain summary judgment cancelling the leases.

¶ 27 A significant distinction between *Crain* and the case under review is the fact that a demand was made in *Crain.*  Here, there is a dispute about whether the Smith letter constitutes a demand to market.  Moreover, the summary judgment record does not contain materials from which it may be concluded that demand by the other lessors would be useless.  *Crain* and the present case are reviewed according to markedly different standards of review.

¶ 28 *Geyer* and the present case also have significant differences.  Here, the summary judgment materials of Williams, Mahalo and Kepco rely only upon the passage of time.  In *Geyer,* the summary judgment materials affirmatively demonstrated that Geyer had not actively sought to market the gas or secure a pipeline.

██  ¶ 29 Here, Concorde has presented an affidavit of its president stating that Concorde actively sought a market and a pipeline, but without providing specific details.[16]  Williams, Kepco and Mahalo argued that the conclusory nature of the affidavit did not suffice to demonstrate that an issue of fact exists.  *Buckner v. General Motors Corp.,* 1988 OK 73, ¶ 29, 760 P.2d 803, 812 ("Affidavits attached to a motion for summary judgment must set forth such facts as would be admissible in evidence rather than allegations of conclusory statements.  Without a showing that evidence is available, mere contentions and arguments cannot and will not make it true.")  The party responding to a motion for summary judgment has an obligation to present something which shows that when the date of trial arrives, he will have some proof to support his allegations.[17]  *Benson v. Tkach,* 2001 OK CIV APP 100, ¶ 13, 30 P.3d 402, 405 (A general statement in a summary judgment affidavit opining liability, without providing any information and without offering any reason for the conclusions, was not sufficient.)

¶ 30 Summary judgment provides a special pretrial procedural track to search for undisputed material facts and may be utilized in the judicial decision of whether their are fact issues to be decided after a trial.  The procedure does not involve a full-scale trial and the search proceeds with the aid of acceptable probative substitutes.  *State ex rel. Fent v. State ex rel. Oklahoma Water Res. Bd.,* 2003 OK 29, 66 P.3d 432.  When a moving party's summary judgment materials show an absence of substantial controversy as to any material fact, the opposing party has the

---

**15.**  This is the OSCN citation.  The West's Pacific Reporter citation is: 2006 OK CIV APP 92, 140 P.3d 563.

**16.**  Concorde's Response to Williams' summary judgment motion.  Record, Tab 11, Ex A, ¶ 7.

**17.**  Effective November 1, 2009, the legislature enacted 12 O.S. Supp.2009, § 2056.  Section 2056(E) requires that the affidavit set out specific facts.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or as otherwise provided in this rule, set out specific facts showing a genuine issue for trial.
> The summary judgment motions in this case, and the trial court's decision, all occurred before November 1, 2009.

burden to specifically controvert the moving party's showing with acceptable evidentiary material. Rule 13(b), Rules For District Courts, 12 O.S. Supp.2010, ch. 2, app. When a response lacks specificity, the deciding court has no information from which it may conclude that there is a substantial controversy as to any material fact.

¶ 31 Here, Concorde has failed to demonstrate that it acted with any degree of reasonable diligence to market the gas. This means that Williams, Kepco and Mahalo are entitled to summary judgment on their claim of breach of the implied warranty to market the gas, unless Concorde has other defenses and fact issues exist as to those defenses.

¶ 32 Concorde affirmatively defended the breach of implied warranty to market claim. First, it argued that the claim is precluded because of the payment and acceptance of shut-in royalty by the lessors. Second, Concorde asserted that a demand to market is a necessary requisite and the lessors made no demand to market the gas.

¶ 33 Concorde has presented evidentiary materials showing payment or tender of shut-in royalty to the lessors over the years in question. Smith admitted receipt of the shut-in royalty payment.

¶ 34 Williams, Kepco and Mahalo did not address shut-in royalty payments in their motions for summary judgment. Williams filed a reply and characterized the payments as untimely and sporadic, but did not dispute the payment and receipt of the shut-in royalty by the lessors.[18] Kepco and Mahalo also do not dispute the payment and receipt of the shut-in royalty.[19] They only note that shut-in royalty payments are not relevant if the well is not capable of producing in paying quantities.[20] Moreover, none of the Appellees dispute the fact that the leases here contain language authorizing shut-in royalty and equating such payments to production.

¶ 35 The lessors acceptance of the shut-in royalty benefits from Concorde before a cancellation action is brought works an estoppel to deny Concorde's title when such benefits are accepted before the cancellation suit is commenced. *Danne,* 1994 OK CIV APP 138, ¶ 27, 883 P.2d at 218.

¶ 36 Concorde's response presented evidentiary materials showing tender of payment and receipt of shut-in royalty. Appellees have the same responsibility, as did Concorde, to present evidentiary materials showing factual issues regarding payment of the shut-in royalty. Appellees have not met their burden to show that there are no issues of fact regarding Concorde's defense based on payment of shut-in royalty to lessors other than Smith. Smith, having accepted shut-in royalty, is estopped from denying Concorde's title. *Id.*

¶ 37 Next, whether the 1991 Smith letter constituted a demand to market gas is not clear. Moreover, there is no record here of any other lessor making demand at any time. As set out in *Crain,* reasonableness of the demand and compliance are questions of fact to be determined from the circumstances of each case and demand may be excused when it "would be a vain and useless thing." *Crain,* 1998 OK CIV APP 193, ¶ 4, 972 P.2d at 1181.

¶ 38 Here, there are factual questions pertaining to all of the foregoing elements set out in *Crain,* regardless of whether the 1991 Smith letter is examined or whether the letter from counsel for Mahalo/Kepco is the subject of the demand.[21] Moreover, there are issues of fact when considering the excused demand under *Indian Territory Illuminating Oil Co.,* 1937 OK 253, 69 P.2d 624 (Syl. 2) ("Under a state of facts, however, where it is clear that lessee would not have complied with such demand until a judicial determination of the necessity therefor had been had, and where the lessee manifests a positive and definite intention not to comply with such demand, the lessor may immediately commence action against the lessee for cancellation of the lease without further notice."). The factual issues about demand also

18. Williams' Reply. Record, Tab 13.

19. Mahalo/Kepco Reply. Record, Tab 14.

20. See n. 4, at p. 4.

21. *See* n. 10

preclude summary judgment as to the breach of implied warranty to market theory.

## CONCLUSION

¶ 39 The Appellees seek to cancel Concorde's New Leases either because they expired or because they are forfeited for breach of the implied warranty to market. There is an existing well, but no revenue was forthcoming for about seventeen years.

¶ 40 In order to hold the New Leases, Concorde must have production, which means production in paying quantities. Moreover, the threshold question is whether the well is capable of production. Under the summary judgment record and standard of review, there are factual issues regarding the capability of the well to produce in paying quantities during the seventeen-year period in question. Therefore, summary judgment does not apply on the theory of expiration because of failure to have a well capable of production.

¶ 41 Continuation of a lease where the well is capable of production in paying quantities is subject to any violation of the implied covenant to market. The lessee's performance under the covenant is tested by a reasonable diligence standard. Concorde has not demonstrated any issue of fact regarding its lack of diligence to market in light of the seventeen years.

¶ 42 However, before a court of equity will grant a forfeiture, the lessor must demand the implied covenant be complied with and give reasonable time for compliance. In addition, payment and acceptance of shut-in royalty may excuse failure to market. Here, there are issues of fact regarding the existence of a demand, excused demand and, except as to Smith, the payment and acceptance of shut-in royalty.

¶ 43 Last, this Court notes that the record shows, without dispute, that in July, August and September of 2008, gas was sold with an approximate revenue of $24,000.00. The record stops at that point. The record does not reveal whether gas sales continued or whether royalty from sale was made and accepted by the lessors, or their successors, thereby raising issues of estoppel. The facts and the law applicable to this aspect of the case are for the trial court's first instance resolution. *Bivins v. State ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464.

¶ 44 Therefore, the trial court's summary judgment, as clarified in its Order *Nunc Pro Tunc*, is reversed and the cause is remanded for further proceedings.

¶ 45 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

GABBARD, V.C.J., and GOODMAN, P.J., concur.